No. 65,152

STATE OF KANSAS, *Appellee*, v. KEITH REED, *Appellant*.

(811 P.2d 1163)

Opinion filed May 24, 1991.

*Margaret A. Lutes,* assistant district attorney, argued the cause, and *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, were with her on the brief for appellee.

*Rick Kittel,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the briefs for appellant.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal from the trial court's ruling that K.S.A. 1989 Supp. 21-4603(3)(a), which provides that a district court *shall* modify a defendant's sentence when recommended by the State Reception and Diagnostic Center (SRDC) (now the Topeka Correctional Facility-east) unless specific findings are made by the trial court, is unconstitutional on separation of powers grounds.

The facts are not in dispute and have no real significance to the question before us. The defendant, Keith Reed, previously was charged as a juvenile, on two separate occasions, with rape. His defense was consent. Defendant was adjudicated a juvenile offender for the crime of aggravated sexual battery on the first offense and for the crime of indecent liberties with a child on

the second offense. He served five months at the Youth Center at Topeka (YCAT).

The night defendant (then 18 years of age) was released from YCAT, he committed criminal offenses which led to his being bound over for trial as an adult on three counts of rape. Pursuant to a plea bargain, he pled guilty to one count of aggravated sexual battery (K.S.A. 21-3518[1][b]), with the understanding that the State would recommend that he receive a sentence of three to ten years with the right to request a sentence modification upon receipt of a report and recommendation from the SRDC.

Reed was examined by the SRDC, and it recommended: "The recommendation for this inmate is to continue incarcerated [sic]. A second recommendation is issued in regard to a sentence length modification that will allow the inmate to return to society at an earlier date."

The defendant was adjudged guilty of aggravated sexual battery, a class D felony. The penalty statute, K.S.A. 21-4501, provides for a chapter 35 crime a minimum penalty of not less than 2 years nor more than 3 years and a maximum sentence of not less than 5 years nor more than 10 years. Thus, the trial court had the option of reducing Reed's minimum sentence from 3 years to as low as 2 years and the maximum from 10 years to as low as 5 years.

The history of the statute in question is confusing and will be set forth later in this opinion. In order to avoid confusion, we point out that the statute the trial court cited as being unconstitutional was erroneously cited. The statute cited, K.S.A. 1989 Supp. 21-4603(4), refers to the secretary of corrections making a recommendation for sentence modification. The statute the trial court discussed and intended to declare unconstitutional is L. 1989, ch. 92, § 2, subparagraph (3)(a), codified as K.S.A. 1989 Supp. 21-4603(3)(a), which reads, in pertinent part:

"[T]he court . . . *shall* modify such sentence if recommended by the state reception and diagnostic center unless the court finds that the safety of the public will be jeopardized *and* that the welfare of the inmate will not be served by such modification." (Emphasis supplied.)

The trial court, apparently on its own volition and without benefit of briefs or argument and without citing any authority, held the statute unconstitutional, reasoning as follows:

"The Court is of the view that Chapter 92 of the 1989 Session Laws and, more particularly, Section (2), subparagraph (4) [*sic*], is an unconstitutional violation of the separation of powers. Modification of sentence is a judicial function. This places the power to modify in an executive branch official, and, more particularly, a psychiatrist working for the Secretary of Corrections. The standard is an impossible standard in most cases because the Court has to find not only that the safety of the public will be jeopardized, but also that the welfare of the inmate will [not] be served by modification. This gives carte blanche authority for modification to a psychiatrist working for the Secretary of Corrections.

"Furthermore, the Court as a second ground finds that this statute is an unlawful delegation of legislative power over sentences in criminal cases with inadequate standards contained in the statute for the Secretary of Corrections or a psychiatrist working under him to determine when a sentence should be modified. The legislature has a right to set the sentence, but there is no constitutional basis to give a power to modify to a doctor working for the Secretary of Corrections on any basis whatsoever. The statute contains no standards whatsoever. It simply provides the power to modify and requires that the Court follow the recommendation unless it meets extremely difficult and unreasonable standards on the part of the Court with no standards whatsoever on the executive branch official. As far as this statute is concerned, the Secretary of Corrections could modify for any reason whatsoever and the Court would have to accept it unless these unreasonable standards were able to be met by evidence in the case and a finding by the Court."

This offense occurred on September 20, 1989. Thus, the law that was in effect on that date, K.S.A. 1989 Supp. 21-4603, applies. Historically, K.S.A. 1987 Supp. 21-4603 (the "1987 statute") was effective between July 1, 1986, and July 1, 1988. Subsection (3) of that statute stated that the district court *"may"* modify a sentence within 120 days of the date the sentence is pronounced.

The 1988 legislature passed two bills which modified the 1987 statute. On April 14, 1988, the legislature approved L. 1988, ch. 116, § 1, which changed only subsection (3) of the 1987 statute but retained the "may" language of the subsection. On May 10, 1988, the legislature adopted L. 1988, ch. 115, § 8, which made numerous changes to the statute but left subsection (3) as it had been previously and did not reflect the changes made in L. 1988, ch. 116, § 1.

The result of these two independent bills was reflected in the 1988 statute books as two different, but largely identical, statutes. L. 1988, ch. 115, § 8, was reported as K.S.A. 21-4603 (the "1988

statute") and L. 1988, ch. 116, § 1, was reported as K.S.A. 21-4603a (the "1988a statute").

The 1988a statute was repealed by the 1989 legislature. L. 1989, ch. 95, § 12. Nevertheless, for a time, we had two versions of the authorized dispositions statute because the legislature passed two independent bills modifying the 1988 statute. On April 18, 1989, the legislature passed L. 1989, ch. 95, § 5, which modified the 1988 statute in a number of ways but left the "may" language in subsection (3). On April 25, 1989, the legislature passed L. 1989, ch. 92, § 2, which modified the 1988 statute in a number of other ways and did not incorporate the changes made in chapter 95. Most significantly, for present purposes, the legislature changed subsection (3) such that "may" was changed to "shall"; thus, the district court "shall" modify a sentence as recommended by the SRDC unless the court makes certain specified findings.

The result was two authorized dispositions statutes: K.S.A. 1989 Supp. 21-4603 (the "1989 statute") and K.S.A. 1989 Supp. 21-4603c (the "1989c statute"). The former contains "shall" in subsection (3) and the latter retained "may."

The history of the 1989 statute and the 1989c statute indicates they both originated from modifications of the same statute, the 1988 statute, which in turn originated from the 1987 statute. The changes represented in the 1988a statute were not replicated, as it was repealed; both the 1989 statute and the 1989c statute derive from the 1988 statute rather than the 1988a statute. It appears the legislature twice intended to modify the 1987 statute in the 1988 session, and twice intended to modify the 1988 statute in the 1989 session, but never intended to create two inconsistent authorized dispositions statutes.

The legislature subsequently repealed K.S.A. 21-4603a and has amended K.S.A. 1989 Supp. 21-4603(3)(a) so that it now reads, in pertinent part:

"[T]he court . . . *shall* modify such sentence if recommended by the Topeka correctional facility—east unless the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized *or* that the welfare of the inmate will not be served by such modification." (Emphasis supplied.) K.S.A. 1990 Supp. 21-4603(4)(a).

Obviously, changing "and" to "or" is a significant change. K.S.A. 1989 Supp. 21-4603(3)(a), the statute in effect when this crime occurred, required a finding by the trial court that the safety of the public will be jeopardized *and* that the welfare of the inmate will not be served by such modification.

It is the "and" version of the statute that is before us. See *State v. Sutherland*, 248 Kan. 96, 804 P.2d 970 (1991). If the requirement that the court make both findings ("and") is constitutional, then the requirement that the court find either ("or") would likewise be constitutional.

Like the Constitution of the United States, the Kansas Constitution contains no express provision establishing the doctrine of separation of powers. However, it has been recognized that the very structure of the three-branch system gives rise to the doctrine. *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 59, 687 P.2d 622 (1984); *State v. Greenlee*, 228 Kan. 712, 715, 620 P.2d 1132 (1980); *State ex rel. v. Bennett*, 219 Kan. 285, 287, 547 P.2d 786 (1976).

In *State v. Greenlee*, we discussed the doctrine, and established general principles governing the doctrine's application, as follows:

"The basic meaning of the separation of powers doctrine is that the whole power of one department should not be exercised by the same hands which possess the whole power of either of the other departments. *Dreyer v. Illinois*, 187 U.S. 71, 47 L. Ed. 79, 23 S. Ct. 28 (1902); *Van Sickle v. Shanahan*, 212 Kan. 426 [, 511 P.2d 223 (1973)]. It does not necessarily follow, however, that an entire and complete separation is either desirable or was ever intended by the framers of the Constitution. The fact that the powers of one department may overlap with another department's powers has long been a recognized fact. Throughout the judicial history of this state early decisions attempted to apply the doctrine strictly, refusing to tolerate any overlapping of powers. [Citation omitted.] The more recent cases have modified the doctrine, taking a more pragmatic, flexible and practical approach giving recognition to the fact there may be a certain degree of blending or admixture of the three powers of government and that absolute separation of powers is impossible. *Leek v. Theis*, 217 Kan. 784, 539 P.2d 304 (1975). See also *Nixon v. Administrator of General Services*, 433 U.S. 425, 53 L. Ed. 2d 867, 97 S. Ct. 2777 (1977).

"There have been a number of cases in Kansas dealing with the separation of powers and in them the following general principles are established:

"(1) A statute is presumed to be constitutional. All doubts must be resolved in favor of its validity, and before a statute may be stricken down, it

must clearly appear the statute violates the constitution. *Leek v. Theis,* 217 Kan. 784.

"(2) When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented. *Leek v. Theis,* 217 Kan. at 785; *State, ex rel., v. Fadely,* 180 Kan. 652, 308 P.2d 537 (1957).

"(3) A usurpation of powers exists when there is a significant interference by one department with operations of another department. *State, ex rel., v. Bennett,* 219 Kan. 285, 547 P.2d 786 (1976).

"(4) In determining whether or not a usurpation of powers exists a court should consider (a) the essential nature of the power being exercised; (b) the degree of control by one department over another; (c) the objective sought to be attained by the legislature and (d) the practical result of the blending of powers as shown by actual experience over a period of time. *State, ex rel., v. Bennett,* 219 Kan. 285." 228 Kan. at 715-16.

*Greenlee* teaches us that an absolute separation of powers is impossible, and a flexible, pragmatic, and practical approach to the doctrine is the proper approach, with a usurpation of powers existing only when there is "a significant interference" by one department with another department's operations. *State v. Greenlee,* 228 Kan. at 715-16.

Clearly, the sentencing function in a criminal case is considered a judicial function. *State v. Owens & Carlisle,* 210 Kan. 628, 635-36, 504 P.2d 249 (1972). Equally clear is the legislature's exclusive role in providing, through our statutes, for the punishment of convicted criminals. The power of the legislature to specify the punishment for a crime is controlled only by the Constitutions of the United States and the State of Kansas. *State v. Keeley,* 236 Kan. 555, 560, 694 P.2d 422 (1985).

We have previously rejected separation of powers challenges to mandatory sentencing provisions which limit the sentencing discretion of a district court. See *State v. Freeman,* 223 Kan. 362, 370-71, 574 P.2d 950 (1978) (K.S.A. 1977 Supp. 21-4618 mandatory sentencing provisions for those convicted of certain crimes involving use of a firearm upheld); *City of Junction City v. Griffin,* 227 Kan. 332, 338-39, 607 P.2d 459 (1980) (ordinance requiring mandatory jail sentence for prostitution offense upheld). See also *State v. Coutcher,* 198 Kan. 282, 286-87, 424 P.2d 865 (1967) (prosecutorial discretion in seeking sentence enhancement

against habitual offenders no violation of separation of powers); *State v. Gibson,* 8 Kan. App. 2d 135, 137-38, 651 P.2d 949 (1982) (mandatory fine provision of K.S.A. 1980 Supp. 8-1909 [overweight truck] no violation of separation of powers).

To determine whether K.S.A. 1989 Supp. 21-4603(3)(a) constitutes a violation of the separation of powers, we must consider the factors set forth in *State, ex rel., v. Bennett,* 219 Kan. at 289-90 and restated in *Greenlee.*

First, we look to the nature of the power being exercised. We do not believe that the enactment of K.S.A. 1989 Supp. 21-4603(3)(a) unnecessarily or unconstitutionally restricts the discretionary powers of a district court. Under the statute, the court has the discretion to reject an SRDC recommendation for modification of sentence when both (1) the safety of the public will be jeopardized, and (2) the welfare of the inmate will not be served by the modification. SRDC merely recommends. The final determination rests, as it should, with the district court, which considers not only the SRDC recommendation, but other sentencing provisions as well. See K.S.A. 21-4601 *et seq.* Significantly, K.S.A. 21-4601 provides that nondangerous offenders "shall be dealt with by probation, suspended sentence, fine or assignment to a community correctional services program whenever such disposition appears practicable and *not detrimental to the needs of public safety and the welfare of the offender,* or shall be committed for at least a minimum term within the limits provided by law." (Emphasis supplied.)

K.S.A. 21-4601 contains nearly identical language to the findings required by K.S.A. 1989 Supp. 21-4603(3)(a). Similar language is found in K.S.A. 1989 Supp. 21-4603(4), which mandates the modification of sentence when recommended by the secretary of corrections. The language of K.S.A. 1989 Supp. 21-4603(3)(a) reenforces the basic policy of 21-4601 with respect to nonviolent offenders, that is, a disposition short of incarceration wherever practicable, without jeopardizing the public safety and the offender's welfare. Such a policy underscores the emphasis in 21-4601 of individual treatment "in accordance with their individual characteristics, circumstances, needs, and potentialities" rather than application of a blanket template. The SRDC report furthers that policy.

In considering whether the welfare of the inmate will be served as required by K.S.A. 1989 Supp. 21-4603(3)(a), the trial court can consider that the aim of sentencing is to accomplish behavior modification of the inmate. It is in the best interests of the inmate's welfare that the antisocial refusal to obey the criminal laws of this State be modified. Behavior modification can be accomplished by incarceration. That fact was recognized by the mental health professionals in this case when they recommended that Reed be incarcerated. That recommendation is followed by a somewhat vague recommendation that gives no indication as to whether the sentence should be modified so that the inmate would be parole eligible one day or one year earlier than the present minimum sentence.

The United States of America has the highest percent of its population in prison of any country in the world. Kansas has long recognized the need to involve mental health professionals in the behavior modification process. If we ever hope to reverse the trend of incarcerating more and more people, the courts must rely on the expertise of others in determining how to best accomplish behavior modification.

Here, the legislature has clear authority to set the range of sentence; thus, it could lower the minimum sentence. It could also authorize the executive branch to grant paroles (and it has granted the executive branch wide discretion to grant paroles in many areas, depending on the crime or crimes involved). Studies show the trial judges were not following SRDC's recommendations to modify (reduce) sentences in over 50 percent of the cases. O'Neal, *Criminal Law, Procedures and Sentencing*, 58 J.K.B.A. 27, 28 (July/August 1989). The legislature, under pressure from the United States District Court for the District of Kansas to reduce overcrowding, is attempting to encourage the trial courts to follow SRDC's recommendations by modifying more sentences or to articulate reasons in the two designated areas as to why they are not following the recommendations. The nature of the power being exercised is advisory in nature because of the great amount of discretion given to the trial courts to reject the recommendations by making specific findings.

Second, we must seek to determine the degree of control by the executive over the judicial branch. Admittedly, the SRDC

report will receive closer scrutiny and attention than formerly may have been the case. The SRDC reports, however, are not developed lightly. Rather, the reports are normally developed on sound, professional bases. In this case, the report included (1) interviews with the defendant; (2) a background questionnaire completed by defendant's mother; (3) the district attorney's report to the secretary of corrections; (4) an affidavit of the Shawnee County District Court; (5) a Home Base Termination Study; (6) high school transcripts; (7) a battery of psychological examinations; (8) a psychiatric examination; and (9) the results of consultation among a team of diagnostic professionals.

The controls placed upon the district court do not represent "an unlawful delegation of legislative power over sentences in criminal cases" as the trial court found. Rather, the statute channels the discretionary authority of the court in the same fashion as the mandatory presumptive sentencing provisions of K.S.A. 1989 Supp. 21-4606a. Still, the sentencing decision rests with the trial court, with the statute in question providing limitations on a motion to modify sentence.

The third and fourth factors require us to look at the objective sought to be obtained and the pretrial result. The objective sought by the legislature, clearly, was to provide immediate relief to the overcrowded conditions of Kansas prisons. A consideration of this factor, the foundation policy for sentencing decisions set forth in K.S.A. 21-4601, and all the facts before this court leads to the conclusion that K.S.A. 1989 Supp. 21-4603(3)(a) is a valid legislative determination, does not interpose a significant interference by the executive branch upon the judicial branch, does not impose unreasonable standards on the courts, and does not constitute an unconstitutional usurpation of powers.

The trial court also found the statute to be an unlawful delegation of legislative power over sentences in criminal cases with inadequate standards contained in the statute for the executive branch to determine when a sentence should be modified, thus giving unfettered right to a mental health professional to modify sentences. For the reasons set forth above, the SRDC recommendation does not give unfettered discretion and authority to the executive branch. The ultimate authority remains in the judicial branch of government.

The purpose of the State Reception and Diagnostic Center at the time in question was to "provide a thorough and scientific examination and study" of male felony offenders to aid the secretary of corrections in determining whether to parole the inmate or where to place the inmate in the correctional system. K.S.A. 75-5262. Thus, general guidelines are furnished to the executive branch. The standards are sufficient under the circumstances and do not violate the separation of powers doctrine. See, *e.g., Guardian Title Co. v. Bell*, 248 Kan. 146, 805 P.2d 33 (1991).

The trial court, because it found the statute unconstitutional, did not consider the mandate of K.S.A. 1989 Supp. 21-4603(3)(a). Because we have found the statute constitutional, the trial court is directed to reconsider the motion for modification of sentence and should either reduce the sentence or make the necessary findings pursuant to K.S.A. 1989 Supp. 21-4603(3)(a).

Reversed.