No. 87,205

STATE OF KANSAS, *Appellee*, v. LANA J. BEARD, *Appellant*.

(49 P.3d 492)

Opinion filed July 12, 2002.

*Michael P. Whalen*, Law Office of Michael P. Whalen, of Wichita, argued the cause and was on the brief for appellant.

*William R. Mott*, county attorney, argued the cause, and *Carla J. Stovall*, attorney general, was with him on the brief for appellee.

*Timothy G. Madden*, special assistant attorney general, Kansas Department of Corrections, argued the cause and was on the brief for intervenor State of Kansas *ex rel.* Kansas Department of Corrections.

The opinion of the court was delivered by

LOCKETT, J.: Lana Beard appeals the district court's ruling that K.S.A. 1999 Supp. 21-4603d(e) is unconstitutional as a violation of separation of powers. The Department of Corrections (DOC) intervened on appeal.

In January 2000, Beard was charged with unlawful manufacture of methamphetamine, possession of drug paraphernalia, possession of marijuana, and three counts of child endangerment. The possession of marijuana count was later dismissed. In March 2000, Beard was again charged with unlawful manufacture of methamphetamine. The State's motion to consolidate the cases was denied.

The State later amended the information in each case to include one count of sale of methamphetamine, a level 3 drug offense, alleged to have occurred between July 1, 1999, and January 1, 2000. See K.S.A. 2001 Supp. 65-4161(a). Beard pled guilty to both counts of sale of methamphetamine, and the State dismissed all other charges pursuant to a plea agreement. The State and Beard agreed to recommend the maximum sentence on each count, 23 months in prison, and that the sentences run consecutively. Beard's criminal history score was "G."

K.S.A. 1999 Supp. 21-4603d(a) provides in part:

"Prior to . . . sentencing a defendant to incarceration whose offense is classified in . . . grid block[] . . . 3-G, . . . of the sentencing guidelines grid for drug crimes, the court *shall consider placement* of the defendant in the Labette correctional conservation camp, conservation camps established by the secretary of corrections . . . or a community intermediate sanction center. Pursuant to this paragraph the defendant shall not be sentenced to imprisonment if space is available in a conservation camp or a community intermediate sanction center and the defendant meets all of the conservation camp's or a community intermediate sanction center's placement criteria unless the court states on the record the reasons for not placing the defendant in a conservation camp or a community intermediate sanction center." (Emphasis added.)

On May 31, 2000, Beard was sentenced according to the plea agreement. Beard received consecutive sentences of 23 months on each of the two counts of sale of methamphetamine and was remanded into DOC custody. In sentencing Beard to imprisonment, the sentencing judge failed to comply with the statutory mandate

to state on the record why Beard should not be placed in a conservation camp or community intermediate sanction center. See K.S.A. 1999 Supp. 21-4603d(a).

Subsequently, Beard was placed in Labette Correctional Conservation Camp (Labette) by the DOC pursuant to K.S.A. 1999 Supp. 21-4603d(e), which provides:

"The secretary of corrections is authorized to make direct placement to the Labette correctional conservation camp or a conservation camp established by the secretary . . . of an inmate sentenced to the secretary's custody if the inmate: (1) Has been sentenced to the secretary for a probation revocation, as a departure from the presumptive nonimprisonment grid block of either sentencing grid, or for an offense which is classified in grid block[] . . . 3-G . . . of the sentencing guidelines grid for drug crimes; and (2) otherwise meets admission criteria of the camp. If the inmate successfully completes the six-month conservation camp program, the secretary of corrections shall report such completion to the sentencing court and the county or district attorney. *The inmate shall then be assigned by the court to six months of follow-up supervision conducted by the appropriate community corrections services program.* The court may also order that supervision continue thereafter for the length of time authorized by K.S.A. 21-4611 and amendments thereto." (Emphasis added.)

In August 2000, the State filed a motion in the district court to refile the charges that had previously been dismissed against Beard. The State believed Beard violated her plea agreement by applying for placement in Labette. The State also filed a motion to have the portion of K.S.A. 1999 Supp. 21-4603d(e) that requires the sentencing court to place an inmate in community corrections upon completion of a conservation camp program found unconstitutional as a violation of separation of powers.

At the September 22, 2000, hearing on these motions, the State dismissed its motion to recharge Beard on the dismissed counts after testimony indicated that an inmate, such as Beard, would be subject to the loss of good time credit if the DOC considered the inmate qualified for Labette and the inmate refused placement. The court took the unconstitutionality issue under advisement.

The DOC notified the sentencing court on February 13, 2001, that Beard was scheduled to complete Labette on March 30, 2001, and included a proposed journal entry of reassignment to expedite Beard's transfer to community corrections. On February 20, 2001,

the district judge vacated Beard's sentence, ordering that Beard be resentenced because Labette had not been considered by the court at her original sentencing. At the resentencing hearing, Beard was once again sentenced to 23 months on each of the two counts of sale of methamphetamine. As required by K.S.A. 1999 Supp. 21-4603d(a), the district judge then considered placement in Labette. The judge concluded that because the plea agreement had been followed in sentencing Beard, Beard should not be placed in Labette. The judge reasoned that allowing placement in Labette and subsequent release to community corrections would be injurious to the goals of this particular case and to future defendants wishing to engage in plea negotiations.

On April 19, 2001, the district court considered the constitutionality of the statute and held that K.S.A. 1999 Supp. 21-4603d(e) violated the doctrine of separation of powers and was unconstitutional. In its decision, the district court noted that Beard was scheduled to successfully complete Labette on April 20, 2001. The district court ordered that Beard remain incarcerated with the DOC to serve the length of her sentence. A timely notice of appeal was filed in both cases. The district court granted Beard's motion to consolidate the cases on appeal. We have jurisdiction pursuant to K.S.A. 22-3601(b)(2).

This court has been presented with the issue of the constitutionality of K.S.A. 1999 Supp. 21-4603d(e) on three prior occasions. See *State v. Moody*, 272 Kan. 1199, 38 P.3d 659 (2002); *State v. Agosto*, 271 Kan. 888, 27 P.3d 423 (2001); *State v. Martin*, 270 Kan. 603, 17 P.3d 344 (2001). The issue was not addressed in those cases, however, because the 1999 amendment to K.S.A. 21-4603d(e), which was alleged to be unconstitutional, did not apply to those individuals. Thus, for the first time, the constitutionality of K.S.A. 1999 Supp. 21-4603d(e) is before this court for review.

Both Beard and the DOC assert that K.S.A. 1999 Supp. 21-4603d(e) does not violate the doctrine of separation of powers and that the district court erred in finding the statute unconstitutional. To the contrary, the State contends the district court did not err in finding the statute unconstitutional.

The constitutionality of a statute is a question of law over which this court has unlimited review. *Lemuz v. Fieser*, 261 Kan. 936, 943, 933 P.2d 134 (1997); *State v. Ponce*, 258 Kan. 708, 709, 907 P.2d 876 (1995). The court has a duty to construe a statute as constitutional if doing so corresponds with the legislature's apparent intent in enacting the statute. *State v. Martinez*, 268 Kan. 21, 23, 988 P.2d 735 (1999).

In support of his ruling that K.S.A. 1999 Supp. 21-4603d(e) was unconstitutional, the district judge compared the provisions of K.S.A. 1999 Supp. 21-4603d(a) with K.S.A. 1999 Supp. 21-4603d(e). The judge reasoned that K.S.A. 1999 Supp. 21-4603d(e) vested the Secretary of Corrections with the power to overrule the judgment of a court under K.S.A. 1999 Supp. 21-4603d(a) and that this violated the doctrine of separation of powers.

The doctrine of separation of powers is not expressly set forth in either the United States or Kansas Constitutions. However, it has long been recognized that the very structure of our three-branch system gives rise to the doctrine. *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 59, 687 P.2d 622 (1984). The Kansas Constitution creates three distinct and separate departments of government: the legislative, the executive, and the judicial. Kan. Const. art 1, 2, and 3. Only the legislative branch has the authority to define crimes and prescribe punishments, while only the judicial branch is empowered to determine whether an offense has been committed and to assess punishment. *Ponce*, 258 at 711. The executive branch is vested with the power to enforce the laws. *State ex rel. Stephan*, 236 Kan. at 59.

"The doctrine of separation of powers is an outstanding feature of the American constitutional system. The governments, both state and federal, are divided into three branches, *i.e.*, legislative, executive and judicial, each of which is given the powers and functions appropriate to it. Thus a dangerous concentration of power is avoided through the checks and balances each branch of government has against the others. For an excellent discussion of the historical development of the doctrine, see *Van Sickle v. Shanahan*, 212 Kan. 426, 511 P.2d 223 (1973)." *State v. Greenlee*, 228 Kan. 712, 715, 620 P.2d 1132 (1980).

Early Kansas decisions attempted to apply the doctrine strictly and allow no overlapping of powers. However, recent decisions

have modified the doctrine and taken a more pragmatic, flexible, and practical approach, recognizing that there may be a certain degree of "blending or admixture" of the three powers of government and that absolute separation of powers is impossible. It is now a well-recognized fact that the powers of one branch may overlap with another branch's powers. *Greenlee,* 228 Kan. at 715-16.

In determining whether a statute is constitutional, the following general principles have consistently been applied by Kansas courts in addressing a separation of powers issue:

" '(1) A statute is presumed to be constitutional. All doubts must be resolved in favor of its validity, and before a statute may be stricken down, it must clearly appear the statute violates the constitution. *Leek v. Theis,* 217 Kan. 784.

" '(2) When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented. *Leek v. Theis,* 217 Kan. at 785; *State, ex rel., v. Fadely,* 180 Kan. 652, 308 P.2d 537 (1957).

" '(3) A usurpation of powers exists when there is a significant interference by one department with operations of another department. *State, ex rel., v. Bennett,* 219 Kan. 285, 547 P.2d 786 (1976).

" '(4) In determining whether or not a usurpation of powers exists a court should consider (a) the essential nature of the power being exercised; (b) the degree of control by one department over another; (c) the objective sought to be attained by the legislature; and (d) the practical result of the blending of powers as shown by actual experience over a period of time. *State, ex rel., v. Bennett,* 219 Kan. 285.' " *State v. Reed,* 248 Kan. 792, 797-98, 811 P.2d 1163 (1991) (quoting *Greenlee,* 228 Kan. at 715-16).

See *Clark v. Ivy,* 240 Kan. 195, 201, 727 P.2d 493 (1986); *State ex rel. Stephan,* 236 Kan. at 59-60; *State v. Chacon-Bringuez,* 28 Kan. App. 2d 625, 629-30, 18 P.3d 970 (2001).

## Nature of Power Being Exercised

Beard characterizes the essential nature of the power being exercised in this case as the power to grant probation. Beard cites *State v. Dubish,* 236 Kan. 848, 696 P.2d 969 (1985) and Att'y Gen. Op. No. 91-161, as support for her proposition that the function of probation is not an exclusive function of the judiciary and that the legislature may transfer authority from the judiciary to the ex-

ecutive branch. In *Dubish*, this court stated: "Probation is an act of grace and the power to grant probation is provided by the legislature to the court. Probation is separate and distinct from sentence." 236 Kan. at 851. Beard asserts that because probation is distinct from the sentence itself, the finality of the sentence is not affected by the DOC's placement of inmates in Labette. See *Dubish*, 236 Kan. at 851 ("The final judgment in a criminal case is the sentence and, by placing the defendant on probation, the trial court does not affect the finality of the judgment.").

The DOC makes a slightly different analysis of the power being exercised. The DOC does not refer to the power as the power to grant probation, but instead refers to it as the DOC having the power to bring an inmate before the court, when the inmate has successfully completed the conservation camp program and is believed to fall within the scope of K.S.A. 1999 Supp. 21-4603d(e), for an adjudication on whether the inmate is within the eligibility requirements for transfer to community corrections supervision. The DOC acknowledges that K.S.A. 1999 Supp. 21-4603d(e) requires mandatory disposition if an inmate has completed the conservation camp program; however, it likens this to any other mandatory sentencing law that is enacted through legislative process. To support its mandatory sentencing rationale, the DOC cites to *State v. Freeman*, 223 Kan. 362, 369, 574 P.2d 950 (1978), in which this court stated that the fixing and prescribing of penalties for violating criminal statutes is a legislative function.

The State asserts that this particular mandatory placement in community corrections supervision requires the court to place the inmate in community corrections and does not allow the court to exercise its discretion by taking into account certain factors it had previously considered in imposing sentence. Although it did not happen in this case because the sentencing court failed to consider placement in Labette at Beard's original sentencing, under K.S.A. 21-4603d(e), it is possible for the DOC to place an inmate in a conservation camp after the sentencing court has denied such placement. The State takes issue with the DOC's ability to mandate that the court place such an offender in community corrections.

The State contends that the jurisdiction to grant and supervise probation lies solely with the district court, citing *Dubish*, 236 Kan. at 851. It must be noted that in making this statement, however, the *Dubish* court relied upon the statutes and case law at the time and explicitly recognized that the power to grant probation is dependant upon statutory provisions. See 236 Kan. at 851. The State also disputes Beard's claim that probation is separate from the sentence. In doing so, the State relies upon this court's statement in *State v. Martin*, 270 Kan. at 610, that K.S.A. 21-4603d(e) is a substantive prescription of punishment and not a procedural statute.

Although both the State and Beard refer to the court's placement under K.S.A. 1999 Supp. 21-4603d(e) as probation, placement in community corrections after being transferred into the custody of the DOC is not probation. Our statutes refer to placement in community corrections as being distinct from parole or probation. See, *e.g.*, K.S.A. 21-4608(b) ("Any person who is convicted and sentenced for a crime committed while on probation, assignment to a community correctional services program, parole or conditional release . . ."); see also Att'y Gen. Op. No. 91-161 (probation, community corrections, and parole are referred to as separate functions).

K.S.A. 2001 Supp. 21-4602 defines these terms as follows:

"(c) *'Probation'* means a procedure under which a defendant, found guilty of a crime upon verdict or plea, is *released by the court after imposition of sentence, without imprisonment* except as provided in felony cases, subject to conditions imposed by the court and subject to the supervision of the probation service of the court or community corrections. In felony cases, the court may include confinement in a county jail not to exceed 60 days . . . as a condition of an original probation sentence and up to 60 days in a county jail upon each revocation of the probation sentence . . . .

"(d) *'Parole'* means the *release of a prisoner to the community by the Kansas parole board* prior to the expiration of such prisoner's term, subject to conditions imposed by the board and to the secretary of correction's supervision. Parole also means the *release by a court of competent jurisdiction of a person confined in the county jail or other local place of detention* after conviction and prior to expiration of such person's term, subject to conditions imposed by the court and its supervision. . . .

. . . .

"(f) '*Community correctional services program*' means a *program which operates under the community corrections act* and to which a defendant is assigned for supervision, confinement, detention, care or treatment, subject to conditions imposed by the court. *A defendant assigned to a community correctional services program shall be subject to the continuing jurisdiction of the court and in no event shall be considered to be in the custody of or under the supervision of the secretary of corrections.*" (Emphasis added.)

Assignment to community corrections in this case cannot be termed probation because Beard was placed in DOC custody and was not released by the court before imprisonment or after assignment to the county jail as the statute permits. See K.S.A. 2001 Supp. 21-4602(c). The placement would also not fall within the statutory definition of parole because the Kansas parole board will not be granting the release nor is Beard in a local place of detention as the definition provides. See K.S.A. 2001 Supp. 21-4602(d). Although none of the parties address the issue, this distinction is relevant in determining the type of power being exercised in this case.

## Degree of Control

The State contends K.S.A. 1999 Supp. 21-4603d(e) allows the DOC to determine the most important aspect of the imposition of punishment and forces the court to unwillingly place an offender in a community corrections program under the court's supervision. Both Beard and the DOC contend the DOC exercises no control over the judiciary because the statute is narrowly prescribed and does not usurp the powers of the judiciary.

Beard cites *State v. Reed*, 248 Kan. 792, as support. In *Reed*, this court reviewed the constitutionality of a statute that required a court to modify a defendant's sentence when recommended by the State Reception and Diagnostic Center (SRDC), unless the court made specific findings on the record. The district court found the statute to be unconstitutional as a violation of separation of powers. The *Reed* court held the statute was constitutional, noting that the statute did not give the SRDC unfettered discretion and authority and that the ultimate authority remained in the judicial branch. The court found that the legislature had properly defined

the scope of the agency and that the statute placed no more limitation on the court's discretion than did mandatory presumptive sentencing provisions. 248 Kan. at 801-02. The State contends *Reed* is distinguishable because under K.S.A. 1999 Supp. 21-4603d(e), the district court does not have the power to refuse to place inmates in community corrections once the inmates have successfully completed conservation camp programs.

First, it must be noted that K.S.A. 1999 Supp. 21-4603d(e) allows the district court some discretion in the disposition of an inmate after completion of a conservation camp program. The district court is allowed discretion in choosing the appropriate community corrections program in which to place the offender and to some extent the length of the placement. See K.S.A. 1999 Supp. 21-4603d(e). Secondly, although *Reed* is worthy of consideration because the facts are similar to this case, *Reed* is also distinguishable for a reason not set forth by any of the parties. In *Reed*, the statute mandated modification of a *sentence*. In this case, Beard's sentence remains the same; it is the manner of serving the sentence that is altered. If Beard does not fully satisfy the requirements of the community corrections program, she is required to serve the remainder of her prison sentence.

In order to determine the degree of control the executive branch is exercising over the judiciary in this case, the nature of community corrections must be considered. A community corrections program is a program that operates under the Community Corrections Act, K.S.A. 75-5290 *et seq.* The Act is to be administered by the Secretary of Corrections or by officers and employees of the DOC. K.S.A. 75-5294(b). The Secretary of Corrections is authorized to adopt rules and regulations necessary for implementation and administration of the Act. K.S.A. 75-5294(a). Pursuant to the Act, the Secretary of Corrections is authorized to make grants to counties for the development and operation of community correctional services. K.S.A. 2001 Supp. 75-5291(a)(1). In order to receive grants, each county or group of counties that are cooperating must have a comprehensive plan for correctional services approved by the Secretary of Corrections. K.S.A. 75-5296(a). Comprehensive plans for correctional services are formulated by corrections advisory

boards. K.S.A. 75-5299. The corrections advisory board has a judicial representative pursuant to K.S.A. 75-5297; however, the board is not a part of the judicial branch of government. *State v. Garrett*, 235 Kan. 768, 774-75, 684 P.2d 413 (1984). ("It is clear from a reading of the various sections of [the Act] that the community corrections program is a part of the overall state correctional program."); see also Att'y Gen. Op. No. 96-54 (community corrections programs are funded almost exclusively by grants from the DOC); Att'y Gen. Op. No. 91-161 (Secretary of Corrections authorized to perform a number of duties under the Act).

"The community corrections act is modeled after a Minnesota law, the stated purpose of which is to promote efficiency and economy in the use of correctional dollars and to develop and maintain community programs and resources while effectively protecting society. Report of Kansas Legislative Interim Studies to the 1978 Legislature - Proposal No. 14 (Feb. 1978). Based on the assumption that the local community can provide better service to most offenders, the act transfers major responsibility for providing client services for all but serious offenders to local units of government. Proposal No. 14." Att'y Gen. Op. No. 96-54.

In arriving at this decision, we note the following: (1) After being placed in DOC custody, the inmate may be placed in a conservation camp only upon meeting the specific statutory criteria for placement set forth by the legislature; (2) only upon successful completion of the conservation camp can the DOC request that the court place the inmate in community corrections; (3) although the legislature has mandated that the court place such inmate in community corrections, the court has some discretion as to the type and length of that placement; (4) the DOC is responsible for funding and administering community corrections programs; and (5) although the inmate will no longer be under DOC custody after transfer to community corrections and will be under the jurisdiction of the court, see K.S.A. 2001 Supp. 21-4602(f), the court is only minimally involved in the community corrections program.

## Legislature's Objective

Beard contends K.S.A. 1999 Supp. 21-4603d(e) carries with it the same legislative intent as the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq.*, because it was created to work in

conjunction with the KSGA. Some of the principles Beard asserts the legislature considered in implementing this provision include: reserving prison space for serious and violent offenders; basing the degree of the sanction on the harm inflicted; and, reserving incarceration for serious violent offenders who present a threat to public safety. The DOC asserts that K.S.A. 1999 Supp. 21-4603d(e) is the legislature's reasoned allocation of resources within the criminal justice system. The State asserts a similar basis for the statute, contending that the statute was most likely promulgated to reduce prison overcrowding.

It is evident from the controlling statutes in this case that the tension between the judicial and executive branches is the direct result of the legislature's objective of reducing prison overcrowding. K.S.A. 1999 Supp. 21-4603d(a) mandates that a sentencing court consider placement of defendants into conservation camps. Qualifying defendants must be placed in a camp unless no space is available or reasons for not placing them in a camp are stated on the record. In a further attempt to ensure the objective is met, the legislature also provided the DOC with the ability to reduce overcrowding by placing qualifying inmates in DOC custody into these same camps. K.S.A. 1999 Supp. 21-4603a(e); see also K.S.A. 75-52,107 ("The secretary of corrections may contract for any correctional services described in K.S.A. 75-5291 and amendments thereto from any county or group of cooperating counties which are receiving grants under this act . . . .").

The State argues the legislature's objective should have been obtained by requiring inmates who successfully complete Labette to be placed under the supervision of the Secretary of Corrections. In making this claim, the State once again focuses upon the burden and interference that placement in community corrections imposes on the courts. There is no basis for such a claim. Because the DOC funds community corrections programs, the DOC is more involved in community corrections than the courts. This is true despite the fact that those assigned to community corrections are not in DOC custody or under DOC supervision. See K.S.A. 2001 Supp. 21-4602(f).

### Blending of Powers

In considering the blending of powers, the court looks to the practical result of the blending as shown by *actual* experience over time. Beard contends that the judiciary has not been harmed in any way by the blending of powers in this case. Beard notes that in reality few inmates participate in Labette pursuant to K.S.A. 21-4603d(e); however, she offers no support for this assertion. Beard also cites to the fact recidivism for those who participate in Labette is less than those who do not participate, citing a report by the DOC to the 2001 legislature.

The State asserts the practical result of the statute is that the court is required to supervise individuals it determined should have been placed in DOC custody and renders dispositions illusory. The State contends that the statute allows for a system "ripe for abuse," citing to the fact the DOC disregarded the plea agreement in this case and altered Beard's disposition. In support of this claim of abuse, the State contends Beard was not even eligible for placement in Labette because she was not within 32 months of her projected release date or within the preferred age range for placement. These issues are not before the court on appeal, however. The State also claims the statute nullifies the adversarial process at sentencing, pressures inmates to violate plea agreements, circumvents victims' rights, and breeds public distrust in the judicial process.

Although K.S.A. 1999 Supp. 21-4603d(e) may lead to the result that a defendant who was affirmatively denied placement in a conservation camp by the district court might later be enrolled in one by the DOC to relieve the prison population, this is what the legislature intended in enacting the statutes. Although there is some blending of powers, the executive branch is not usurping the powers of the judicial branch. Thus, there is no violation of separation of powers that renders the statute unconstitutional.

Reversed and remanded with instructions that Beard be placed in community corrections.