(69 P.3d 201)
No. 89,812

Mark D. Brull, *Appellant*, v. State of Kansas, *Appellee*.

Opinion filed May 9, 2003.

*Randy L. Baird,* of Topeka, for appellant.

*Loren F. Snell, Jr.,* assistant attorney general, and *Phill Kline,* attorney general, for appellee.

Before RULON, C.J., LEWIS, J., and LARSON, S.J.

RULON, C.J.: Petitioner Mark D. Brull appeals the summary denial of his habeas corpus action, claiming the district court erred when finding his petition was untimely and in the alternative that petitioner's substantive claims were without merit. We affirm in part and reverse in part.

A detailed discussion of the underlying facts is not required for us to resolve the issues presented.

## Jurisdiction

First, we must determine if the district court erred when finding petitioner's action was untimely filed.

"(b) Except as provided in K.S.A. 60-1507, and amendments thereto, an inmate in the custody of the secretary of corrections shall file a petition for writ pursuant to subsection (a) within 30 days from the date the action was final, but such time is extended during the pendency of the inmate's timely attempts to exhaust such inmate's administrative remedies." K.S.A. 2001 Supp. 60-1501.

Simply said, as the record in this case is devoid of any information concerning the date upon which the petitioner delivered his petition to prison authorities, the district court improperly dismissed the petition for being untimely. See *Holt v. Saiya,* 28 Kan. App. 2d 356, 361, 17 P.3d 368 (2000).

Interestingly, the petitioner provided his own certification for his habeas corpus petition, alleging that he has been harassed when he attempts to use prison authorities to notarize his documents. Whether these allegations are true or not does not affect the duty of the district court to attempt to ascertain the date the petition

was delivered by the inmate to prison authorities for mailing, according to *Holt.*

Consequently, the district court improperly dismissed this petition as an untimely filing.

## Mootness

The respondent, the Department of Corrections (DOC), contends the timeliness of the petition is unimportant because the issues raised by the petitioner are moot, as petitioner is no longer in the custody of the DOC.

Unquestionably, this court is without the authority to render advisory opinions for abstract questions of law not involving an actual controversy, where the judgment of the court would be without effect. See *In re T.D.*, 27 Kan. App. 2d 331, 333, 3 P.3d 598, *rev. denied* 269 Kan. 933 (2000). However, an issue is not moot where an issue of statewide importance has been raised which is capable of repetition, yet evading review. See 27 Kan. App. 2d at 334.

Here, the petitioner alleges the Kansas Parole Board cannot constitutionally revoke his parole while he is incarcerated under a court order for civil confinement. While this issue is of doubtful statewide importance, it is capable of repetition, not only with other individuals who have been placed within civil confinement but also with the petitioner. As far as this record demonstrates, the petitioner is still subject to postrelease supervision and, therefore, may be returned to prison under the same procedure he is contending violated his constitutional rights.

Because the sanction for a technical violation of the petitioner's conditions of release would be a return to prison for 90 days, any future violation and imposition of a sanction would again be stale before the appeals process would enable this court to hear the merits of the petitioner's case. Consequently, if this court would decide the matter only while the petitioner is within the custody of the DOC, subsequent revocations would continue to evade review.

This court may properly consider the petitioner's claims.

## Separation of Powers

Turning to the petitioner's substantive claims, this court must consider whether the procedure that returned him to the custody of the DOC violated the constitutional principles of due process and separation of powers between the executive and judicial branches.

K.S.A. 2001 Supp. 59-29a07(a) establishes the procedure for civil commitment as a sexually violent predator. The statute anticipates the exact circumstance presented before this court.

"If any person while committed to the custody of the secretary pursuant to this act shall be taken into custody by any law enforcement officer as defined in K.S.A. 21-3110 and amendments thereto pursuant to any parole revocation proceeding or any arrest or conviction for a criminal offense of any nature, upon the person's release from the custody of any law enforcement officer, the person shall be returned to the custody of the secretary for further treatment pursuant to this act." K.S.A. 2001 Supp. 59-29a07(a).

In the context of a parole revocation, due process demands only minimal safeguards; the full panoply of rights afforded a criminal defendant is not required in the revocation of parole. However, due process does require the State to provide an individual with written notice of the claimed violation, to disclose to the individual the evidence of the parole violation, to provide the individual with an opportunity to be heard and to present evidence to counter the alleged violation, to allow the individual to confront any adverse witnesses, to have the allegation of the parole violation adjudicated by a neutral and detached hearing body such as a parole board, and to provide the individual with a written statement by the factfinders regarding the evidence relied upon and the reasons for revoking parole. See *Brown v. Kansas Parole Board*, 262 Kan. 903, 909, 943 P.2d 1240 (1997) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 36 L. Ed. 2d 656, 93 S. Ct. 1756 [1973]).

Although all of these protections were afforded the petitioner in this case, he contends the statutory scheme provided by K.S.A. 2001 Supp. 59-29a07 violates the principle of separation of powers between the executive and the judicial branches of government by extending to an administrative agency the judicial function of adjudicating guilt.

Under the Kansas Constitution, like the United States Constitution, there is no specific provision pertaining to the separation of government powers, but such a doctrine has been implied in the creation of three separate branches of government. See *State v. Beard*, 274 Kan. 181, 185, 49 P.3d 492 (2002) (citing *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 59, 687 P.2d 622 [1984]).

The quintessential determination in a separation of powers challenge to the exercise of power by a particular branch of government is whether the exercise of power usurps the powers reserved to another branch of government. *Beard*, 274 Kan. at 186 (citing *State v. Reed*, 248 Kan. 792, 798, 811 P.2d 1163 [1991]).

Our Supreme Court has established four factors a court should use to consider whether a separation of powers violation has occurred: (1) the essential nature of the power which is being challenged; (2) the degree of control one branch of government holds over another under the power being challenged; (3) the legislative purpose behind the grant of power; and (4) the practical application of the challenged power. *Beard* 274 Kan. at 186 (citing *Reed*, 248 Kan. at 797-98).

In considering these factors in light of a challenge regarding placement in community corrections, our Supreme Court recognized the legislature's authority to define criminal conduct and to establish penalties for such conduct, while the judiciary is empowered to interpret the law in light of a given situation to determine whether a violation of the law has occurred. If a violation has occurred, the judicial branch further possesses the authority to impose the penalty for the violation. Finally, the power to enforce the laws or to execute a sentence duly imposed is vested within the executive branch. See *Beard*, 274 Kan. at 185; *Reed*, 248 Kan. at 800.

As such, the power being challenged in this case is essentially a function of the executive branch. The DOC is an administrative agency charged with executing the penalties imposed by the court for violations of the criminal code and with rehabilitation of persons who are incarcerated for reentry into society. See *Vinson v. McKune*, 265 Kan. 422, 427, 960 P.2d 222 (1998). Determinations

regarding parole eligibility are integral to the exercise of this executive authority. See *Beard*, 274 Kan. at 188-93 (citing K.S.A. 2001 Supp. 21-4602[d]).

The granting of parole or conditional release by the DOC does not conflict with the judicial function of sentencing because such release is possible only after criminal prosectuion and the judicial imposition of sentence. See *Morrissey v. Brewer*, 408 U.S. 471, 480, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). The circumstances under which the DOC may grant release are controlled by statute, and the inmate remains within the custody of the State during the duration of the conditional release or parole period. See K.S.A. 2001 Supp. 22-3717.

Because the challenged exercise of power by the executive branch is a function inherent to the executive branch which does not interfere with the judicial branch's exercise of authority, this court need not consider the other factors set out in *Beard*. The exercise of authority by the DOC in placing the petitioner on supervised release and then revoking the petitioner's privileges for a violation of the conditions of that release does not infringe upon the judicial branch.

The petitioner contends that because he was already under a district court order for civil confinement, the DOC could not properly exercise its authority in contravention of the district court order. However, there is no apparent conflict between the district court's order for civil confinement and the DOC's exercise of its power to revoke the supervised release of the petitioner.

A district court originally ordered the petitioner's confinement within the DOC's custody. The petitioner remained in the court-ordered custody of the DOC until he had successfully completed the conditions or term of his supervised release. The fact that the petitioner was subsequently ordered into the custody of Social and Rehabilitation Services (SRS) does not affect the DOC's custody during the period of supervised release.

Implicit in the legislature's ability to establish legal relationships of individuals within society is its authority to resolve conflicts among such relationships. Here, the legislature has resolved a conflict between the petitioner's custody with the SRS under an order

for civil confinement and the petitioner's custody with the DOC under an order for criminal confinement. See K.S.A. 2001 Supp. 59-29a07(a).

The judicial orders regarding both confinements remain valid, effective, and not subject to modification by the executive branch. Neither the legislative nor the executive branches have exceeded their constitutional authority, as claimed by the petitioner. Consequently, the district court properly found the petitioner's complaint had no legal merit.

Affirmed in part and reversed in part.