(148 P.3d 574)
No. 96,075

# In the Matter of D.T.J.

Opinion filed December 22, 2006.

*Jeffrey L. Cowger,* of Kansas Juvenile Justice Authority, for appellant.

*Tania Groover* and *Sylvia Bribiesca,* assistant district attorneys, *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before MALONE, P.J., GREEN and BUSER, JJ.

MALONE, J.: The Commissioner of Juvenile Justice (commissioner) appeals the district court's denial of the Kansas Juvenile Justice Authority's (JJA) motion to modify the sentence of D.T.J., a juvenile offender placed in the commissioner's custody pursuant to K.S.A. 38-1663 and K.S.A. 38-1664. JJA claims the district court erred by limiting the amount of good time credit the commissioner can award to D.T.J. to 15%. A threshold issue is whether JJA had standing to file a motion to modify D.T.J.'s sentence and whether JJA has standing to bring this appeal. We conclude that standing exists under the facts and circumstances of this case. Concerning the merits of JJA's claim, we conclude the district court lacked statutory authority to limit D.T.J.'s good time credit to 15%.

## Factual and procedural background

On March 23, 2005, D.T.J., d.o.b. 11/01/88, was charged with two counts of aggravated robbery. The State filed a motion requesting permission to prosecute D.T.J. as an adult. After an evidentiary hearing, the district court denied the State's motion, but

designated the proceeding as an extended juvenile jurisdiction prosecution (EJJP) pursuant to K.S.A. 38-1636(f)(3).

On July 14, 2005, D.T.J. pled guilty to both counts of aggravated robbery, and the district court ordered a presentence investigation. At sentencing on September 8, 2005, the district court found that D.T.J. was a violent offender II as defined by K.S.A. 38-16,129(a)(1)(B), having been adjudicated a juvenile offender for an offense which if committed by an adult would constitute a nondrug severity level 1, 2, or 3 felony. Because the case was an EJJP, the district court imposed both a juvenile sentence and an adult criminal sentence. The district court ordered D.T.J. to be placed in the commissioner's custody for direct commitment to a juvenile correctional facility until the age of 22 years, 6 months, followed by conditional release until D.T.J. reached 23 years of age. Noting the proceeding was an EJJP, the district court ordered that D.T.J. could not receive more than 15% good time credit on his juvenile sentence.

The district court also sentenced D.T.J. pursuant to the Kansas Criminal Code. The district court imposed a sentence of 233 months' imprisonment on Count 1 and 61 months' imprisonment on Count 2, to be served concurrently. However, the district court stayed the adult criminal sentence as long as D.T.J. complied with all of the conditions of his juvenile sentence.

On November 3, 2005, JJA, on the commissioner's behalf, filed a motion to modify D.T.J.'s sentence, seeking to remove the district court's 15% limitation on good time credit. The State filed a response to JJA's motion and subsequently filed its own motion for the district court to deny JJA's request, due to lack of standing since JJA was not a party to the action. After a hearing on January 6, 2006, the district court adopted the State's response and denied JJA's motion to modify D.T.J.'s sentence. Likewise, the district court granted the State's motion to deny JJA's request due to lack of standing. JJA timely appeals.

### Appellate jurisdiction

At oral argument, the issue was raised whether this court has jurisdiction to hear JJA's appeal. In district court, the State raised

multiple arguments against JJA's motion to modify D.T.J.'s sentence. One of the State's arguments was that K.S.A. 38-16,130, which authorizes the commissioner to award good time credit, violates the separation of powers doctrine and is therefore unconstitutional. In the journal entry denying JJA's motion, the district court indicated that it "adopt[ed] the State's response." The parties have not furnished a transcript of the hearing or the district court's ruling from the bench, and we have no record of the district court's ruling other than the journal entry.

Generally, an appeal from a final judgment of a district court in which a statute of this state has been held unconstitutional shall be taken directly to the Kansas Supreme Court. K.S.A. 60-2101(b); K.S.A. 38-1683(b) (procedure on appeal under the Kansas Juvenile Justice Code, K.S.A. 38-1601 *et seq.*, shall be governed by article 21 of chapter 60 of the Kansas Statutes Annotated). Accordingly, the State argues that even if JJA has standing to bring this appeal, the appeal should have been taken directly to the Supreme Court.

However, the State has never argued in district court or on appeal that K.S.A. 38-16,130 is unconstitutional on its face. The State only argues that the statute is unconstitutional, as applied by JJA, because it violates the separation of powers doctrine. In the journal entry denying JJA's motion, the district court indicated that it "adopt[ed] the State's response." However, the district court did not expressly declare K.S.A. 38-16,130 to be unconstitutional, either on its face or as applied. Under these circumstances, we conclude the statutes of appellate jurisdiction do not require this appeal to be taken directly to the Kansas Supreme Court, and this court retains jurisdiction over JJA's appeal.

### Standing

A threshold issue is whether JJA had standing to file a motion to modify D.T.J.'s sentence concerning good time credit and, likewise, whether JJA has standing to bring this appeal. JJA contends it has standing because the commissioner has a personal stake in the district court's decision to limit good time credit. JJA further contends it was authorized to request modification of D.T.J.'s sentence under K.S.A. 2005 Supp. 38-1665(c).

The existence of standing is a question of law over which an appellate court's scope of review is unlimited. *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005). Additionally, "[t]he interpretation of a statute is a question of law over which this court has unlimited review. An appellate court is not bound by the trial court's interpretation. [Citation omitted.]" *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

Generally, standing is a question of whether a party has alleged such a personal stake in the outcome of a controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on behalf of the party. A party must have a sufficient stake in the outcome of an otherwise justiciable controversy in order to obtain judicial resolution of that controversy. *Moorhouse v. City of Wichita*, 259 Kan. 570, 574, 913 P.2d 172 (1996).

The issue here is not whether a party has standing to initiate a lawsuit. Rather, the issue is whether JJA, who is not a party of record, has standing to intervene and challenge D.T.J.'s juvenile sentence concerning good time credit. Ordinarily, interested parties who are not parties of record do not have standing to take part in or control the proceedings. Here, JJA did not file a separate action to contest D.T.J.'s juvenile sentence, nor did D.T.J. join in the motion to modify his sentence.

JJA's motion to modify sentence concerned only the amount of good time credit the commissioner was authorized to award D.T.J. while he was in the commissioner's custody. Good time credit for juvenile offenders is governed by K.S.A. 38-16,130, which provides:

"On and after July 1, 1999:

"(a) For purposes of determining release of a juvenile offender for an offense committed on or after July 1, 1999, a system shall be developed whereby good behavior by juvenile offenders is the expected norm and negative behavior will be punished.

"(b) *The commissioner of juvenile justice is hereby authorized to adopt rules and regulations to carry out the provisions of this section regarding good time calculations.* Such rules and regulations shall provide circumstances upon which a juvenile offender may earn good time credits through participation in programs which may include, but not be limited to, education programs, work participation, treatment programs, vocational programs, activities and behavior modification.

Such good time credits may also include the juvenile offender's willingness to examine and confront the past behavior patterns that resulted in the commission of the juvenile's offense.

"(c) If the placement sentence established in K.S.A. 38-16,129, and amendments thereto, is used by the court, *the juvenile offender shall serve no less than the minimum term authorized under the specific category of such placement sentence.*" (Emphasis added.)

K.S.A. 38-16,130 specifically provides that the commissioner, not the court, shall develop a system of good behavior for juvenile offenders and shall adopt rules and regulations concerning good time calculations. At oral argument, counsel for JJA announced the commissioner was in the process of developing such regulations. The only statutory limitation for good time credit is that the juvenile offender shall serve no less than the minimum term of the sentence. In D.T.J.'s case, his minimum commitment to the juvenile correctional facility is 24 months. K.S.A. 38-16,129(a)(1)(B). Here, the district court imposed a limit on D.T.J.'s good time credit, which is more restrictive than the limitation contained in the statute. It is clear the commissioner has a stake in the outcome of this controversy, which supports JJA's claim of standing. Nevertheless, we must examine other statutes under the Kansas Juvenile Justice Code to determine if JJA had authority to file a motion to modify D.T.J.'s sentence.

K.S.A. 38-1664 authorizes the district court to place a juvenile offender in the commissioner's custody. This statute provides in part:

"(b) When a juvenile offender has been placed in the custody of the commissioner, the commissioner shall notify the court in writing of the initial placement of the juvenile offender as soon as the placement has been accomplished. The court shall have no power to direct a specific placement by the commissioner, but may make recommendations to the commissioner. The commissioner may place the juvenile offender in an institution operated by the commissioner, a youth residential facility or a community mental health center. If the court has recommended an out-of-home placement, the commissioner may not return the juvenile offender to the home from which removed without first notifying the court of the plan.

"(c) During the time a juvenile offender remains in the custody of the commissioner, the commissioner shall report to the court at least each six months as to the current living arrangement and social and mental development of the ju-

venile offender and document in writing the reasonable efforts that have been made and the progress made to finalize the permanency plan.

"(d) If the juvenile offender is placed outside the juvenile offender's home, a permanency hearing shall be held not more than 12 months after the juvenile offender is placed outside the juvenile offenders home and, if reintegration is a viable alternative, every 12 months thereafter. The court may appoint a guardian ad litem to represent the juvenile offender at the permanency hearing. Juvenile offenders who have been in extended out of home placement shall be provided a permanency hearing within 30 days of a request from the commissioner."

K.S.A. 38-1664 provides for the commissioner to play a role under the Kansas Juvenile Justice Code that the Secretary of the Kansas Department of Corrections (KDOC) does not play under the Kansas Criminal Code. When the district court places a juvenile offender in the commissioner's custody, the commissioner must notify the court of the juvenile offender's placement in any specific facility, and the commissioner must report to the court every 6 months as to the juvenile's current living arrangement. The commissioner must notify the court before returning a juvenile offender to the home, and the commissioner may request a permanency hearing for a juvenile offender in an extended out-of-home placement.

A district court's sentence under the Kansas Juvenile Justice Code does not have the finality of a sentence under the Kansas Sentencing Guidelines Act, which generally cannot be modified except to correct arithmetical errors. K.S.A. 21-4721(i). K.S.A. 2005 Supp. 38-1665 addresses modification of a juvenile offender's sentence. This statute provides in part:

"(b) At any time after the entry of an order awarding custody of a juvenile offender to a person other than a parent, the court on its own motion, *or the commissioner*, the attorney for the juvenile offender or any party or parent may file a motion with the court for a rehearing *on the issue of custody.* . . .

"(c) Any time within 60 days after a court has committed a juvenile offender to a juvenile correctional facility the court may modify the sentence and enter any other sentence, except that a child support order which has been registered under K.S.A. 38-16,119 and amendments thereto may only be modified pursuant to K.S.A. 38-16,119 and amendments thereto.

"(d) Any time after a court has committed a juvenile offender to a juvenile correctional facility, the court may, *upon motion by the commissioner*, modify the

sentence and enter any other sentence based on the medical condition of the juvenile." (Emphasis added.)

K.S.A. 2005 Supp. 38-1665(b) expressly authorizes the commissioner to file a motion with the court for a rehearing on the issue of custody any time after the entry of an order awarding custody of a juvenile offender to a person other than a parent. Because JJA's motion only concerned D.T.J.'s good time credit, JJA filed its motion under 38-1665(c). This subsection authorizes the district court to modify a sentence within 60 days after a juvenile offender has been committed to a juvenile correctional facility. However, 38-1665(c) does not specify the appropriate parties who may file a motion under that subsection. K.S.A. 2005 Supp. 38-1665(d) expressly authorizes the commissioner to file a motion to modify a juvenile offender's sentence based upon a change in the juvenile's medical condition.

Furthermore, K.S.A. 38-16,131, which also addresses sentence modification, provides in part:

"On and after July 1, 1999:

"(a) *The commissioner of juvenile justice may petition the court to modify the placement sentence established in K.S.A. 38-16,129,* and amendments thereto, after a juvenile offender has served the minimum term indicated by the placement sentence, based upon program completion, positive behavior modification and progress made.

"(b) If the court grants the modification, the sentence shall be shortened, and the term of aftercare that was pronounced at sentencing shall commence." (Emphasis added.)

It is clear from these statutes that in many instances, the commissioner is expressly authorized to file a motion with the district court for rehearing or sentence modification of a juvenile offender placed in the commissioner's custody. This is consistent with the unique role the commissioner plays under the Kansas Juvenile Justice Code to rehabilitate the juvenile offender. The statutes do not expressly authorize the commissioner to file a motion to modify sentence concerning good time credit. However, it is illogical to conclude the commissioner lacks standing to file this specific motion, when the commissioner is expressly authorized to intervene on issues of custody generally. Good time credit impacts the length

of time a juvenile offender is placed with the commissioner, and to this extent the amount of good time credit a juvenile offender can earn directly concerns the issue of custody.

"In construing statutes and determining legislative intent, several provisions of an act or acts, *in pari materia*, must be construed together with a view of reconciling and bringing them into workable harmony if possible. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. The court must give effect to the legislature's intent even though words, phrases, or clauses at some place in the statute must be omitted or inserted." *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, Syl. ¶ 2, 69 P.3d 1087 (2003).

Considering the statutes discussed herein in their entirety, we agree that JJA was authorized to file a motion to modify D.T.J.'s custody under either K.S.A. 2005 Supp. 38-1665(b) or (c). The commissioner has a stake in the district court's decision to limit good time credit. We conclude that JJA had standing to file its motion to modify D.T.J.'s sentence. Likewise, we conclude JJA has standing to bring this appeal. This does not mean that JJA would have standing to challenge a district court's sentencing order in every juvenile offender case. However, under the facts and circumstances of this case, we conclude JJA has standing to challenge the district court's specific order concerning good time credit.

### Did the court err in limiting good time credit

Turning to the merits of the case, the district court ordered D.T.J. committed to a juvenile correctional facility until he reached the age of 22 years, 6 months. Noting the juvenile proceeding was an EJJP, the district court ordered that D.T.J. could not receive more than 15% good time credit on his juvenile sentence. Specifically, the district court's journal entry stated:

"The Court imposes specific conditions for JJA.

"1. On May 25, 2005, this Court designated the proceedings to be an Extended Juvenile Jurisdiction Prosecution (EJJP) . . . . These proceedings are therefore different than a normal direct commit of a juvenile offender. The Court in an EJJP retains sentencing authority under 38-16,126(b) and can, thus, impose conditions as to good time credit.

"2. Based upon the forgoing, the Court ADJUDGES, ORDERS AND DE-CREES that respondent will receive no more than fifteen percent (15%) good time credit."

K.S.A. 38-1663 authorizes the district court to impose several sentencing alternatives for a juvenile offender. Furthermore, in an EJJP, the district court imposes both a juvenile sentence and an adult criminal sentence. K.S.A. 38-16,126(a). The adult criminal sentence is stayed unless the juvenile offender violates the provisions of the juvenile sentence. K.S.A. 38-16,126(a)(2). JJA contends neither K.S.A. 38-1663 nor K.S.A. 38-16,126 allows the district court to limit the amount of good time credit a juvenile offender can earn. The interpretation of a statute is a question of law over which this court has unlimited review. *Bryan*, 281 Kan. at 159.

"The fundamental rule of statutory construction is to ascertain the legislature's intent. The legislature is presumed to have expressed its intent through the language of the statutory scheme. Ordinary words are given their ordinary meanings. A statute should not be read to add language that is not found in it or to exclude language that is found in it. When a statute is plain and unambiguous, the court must give effect to the legislature's intent as expressed rather than determining what the law should or should not be. [Citation omitted.]" 281 Kan. at 159.

" ' "In construing statues and determining legislative intent, several provisions of an act in pari materia must be construed together with a view of reconciling and bringing them into workable harmony if possible." [Citations omitted.]'

" 'As a general rule, statutes are construed to avoid unreasonable results. There is a presumption that the legislature does not intend to enact useless or meaningless legislation. [Citations omitted.]' " *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 89, 106 P.3d 492 (2005).

JJA correctly asserts that K.S.A. 38-1663 does not specifically authorize the district court to limit the amount of good time credit a juvenile offender can earn. The State contends D.T.J.'s case is "different" because it was designated as an EJJP. The State asserts the district court's continuing jurisdiction under K.S.A. 38-16,126(b) allowed it to impose "specific conditions for JJA," including a limitation on D.T.J.'s good time credit of 15%. However, the State does not provide any authority for this assertion. The district court's only authority under 38-16,126(b) is to revoke the stay of the adult criminal sentence if the juvenile offender violates the provisions of the juvenile sentence. There is no provision in

38-16,126(b) that authorizes the district court to impose specific conditions of supervision for JJA, such as a limitation on the juvenile offender's good time credit.

JJA asserts the legislature has given the commissioner the authority to implement a good time credit program under K.S.A. 38-16,130; therefore, the district court cannot override the commissioner's discretion in determining whether to grant or deny good time credit. JJA argues the situation is similar to the adult system in which the sentencing court cannot limit the good time credit awarded by the KDOC, except as provided by statute. Indeed, the Kansas Supreme Court has explicitly stated: "Good time credits are awarded by [KDOC] employees; the sentencing court plays no role in the process." *State v. Golston*, 269 Kan. 345, 348, 7 P.3d 1132 (2000).

Under both the Kansas Criminal Code and the Kansas Juvenile Justice Code, the legislature has authorized the respective authorities to develop a system for awarding good time credit. K.S.A. 2005 Supp. 21-4722(a)(2) (adult cases); K.S.A. 38-16,130 (juvenile cases). Likewise, in both types of cases, the legislature has expressed the purpose for developing such a system—to ensure that good behavior is the expected norm and negative behavior will be punished. K.S.A. 2005 Supp. 21-4722(a)(1); K.S.A. 38-16,130(a). Finally, the legislature has expressed maximum caps on the amount of good time credit adult or juvenile offenders can earn. K.S.A. 2005 Supp. 21-4722(a)(2) and K.S.A. 2005 Supp. 21-4706(a) (limiting the good time credit to 15% of the primary sentence authorized by law); K.S.A. 38-16,130(c) and K.S.A. 38-16,133 (limiting good time credit to an amount which does not reduce the minimum term of incarceration authorized by law for the offense committed).

K.S.A. 38-16,130 specifically provides that the commissioner, not the court, shall develop a system of good behavior for juvenile offenders and shall adopt rules and regulations concerning good time calculations. The only statutory limitation for good time credit is that the juvenile offender shall serve no less than the minimum term of the sentence. In D.T.J.'s case, his minimum commitment to the juvenile correctional facility is 24 months. K.S.A. 38-16,129(a)(1)(B). However, the Kansas Juvenile Justice Code con-

tains no express provision limiting good time credit to 15%, as is found in the Kansas Criminal Code. Had the legislature intended to limit the amount of good time credit in a juvenile offender's case to 15%, this could have easily been accomplished by statute. We agree with JJA that the district court lacked statutory authority to limit D.T.J.'s good time credit to 15%.

The State claims K.S.A. 38-16,130, as applied by JJA, violates the separation of powers doctrine because it usurps the court's power to impose sentences and therefore is unconstitutional. " ' "The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the statute may be stricken down it must clearly appear the statute violates the constitution." ' " *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 (2006).

"The doctrine of separation of powers is not expressly set forth in either the United States or Kansas Constitutions. However, it has long been recognized that the very structure of our three-branch system gives rise to the doctrine. [Citation omitted.] The Kansas Constitution creates three distinct and separate departments of government: the legislative, the executive, and the judicial. Kan. Const. art 1, 2, and 3. Only the legislative branch has the authority to define crimes and prescribe punishments, while only the judicial branch is empowered to determine whether an offense has been committed and to assess punishment. [Citation omitted.] The executive branch is vested with the power to enforce the laws. [Citation omitted.]

. . . .

"Early Kansas decisions attempted to apply the doctrine strictly and allow no overlapping of powers. However, recent decisions have modified the doctrine and taken a more pragmatic, flexible, and practical approach, recognizing that there may be a certain degree of 'blending or admixture' of the three powers of government and that absolute separation of powers is impossible. It is now a well-recognized fact that the powers of one branch may overlap with another branch's powers. [Citation omitted.]" *State v. Beard*, 274 Kan. 181, 185-86, 49 P.3d 492 (2002).

In *Beard*, the State attacked the constitutionality of K.S.A. 21-4603d(e) (now K.S.A. 2005 Supp. 21-4603d[l]), which authorizes the KDOC to make a direct placement of an inmate to the Labette Correctional Conservation Camp, followed by supervision with community corrections even if this reduced the minimum term of incarceration ordered by the district court. In determining whether

a usurpation of power existed, the court considered (a) the essential nature of the power being exercised; (b) the degree of control by one department over another; (c) the objective sought to be attained by the legislature; and (d) the practical result of the blending of powers as shown by actual experience over a period of time. 274 Kan. at 186. The court concluded the statute was not unconstitutional as a violation of the separation of powers doctrine. 274 Kan. at 193.

In D.T.J.'s case, the inquiry is whether the commissioner's authority to award good time credit pursuant to K.S.A. 38-16,130 usurps the district court's power to impose sentences. We reach the same conclusion as the court reached in *Beard*. While the commissioner's power to award good time credit may blend with the district court's power to sentence a juvenile offender, the commissioner is not usurping the powers of the judicial branch by controlling the amount of good time credit a juvenile offender can earn. The commissioner's power to award good time credit does not violate the separation of powers doctrine so as to render K.S.A. 38-16,130 unconstitutional.

Finally, the State argues the district court's limitation of D.T.J.'s good time credit should be upheld as a matter of public policy. The State argues it is contrary to public policy to allow a juvenile offender's good time credit to be as high as 40% when an adult's good time credit under the criminal code is limited to 15%. Essentially, the State requests this court to override the legislature's function of enacting laws in the public's best interest. We decline the State's request to establish public policy and suggest this argument is better left to the legislature to address.

For all these reasons, we conclude the district court erred in limiting the amount of good time credit the commissioner can award to D.T.J. to 15%. D.T.J.'s case is remanded for resentencing without the limitation on good time credit.

Reversed and remanded.