(228 P.3d 1074)

No. 101,347

STATE OF KANSAS, *Appellee*, v. ROBERT D. CLUCK, *Appellant*.

Opinion filed April 8, 2010.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for the appellant.

*Charles D. Baskins*, county attorney, and *Steve Six*, attorney general, for the appellee.

Before STANDRIDGE, P.J., PIERRON, J., and BUKATY, S.J.

PIERRON, J.: Robert D. Cluck appeals his convictions by a jury of three counts of involuntary manslaughter while under the influence of alcohol and one count of improper passing. Cluck also argues the district court imposed an illegal sentence by ordering him to post photos of the victims in his jail cell, erred in denying

his motion to suppress his confession, and failed to exercise discretion in denying his motions for departure.

Cluck does not challenge the sufficiency of the evidence of his convictions and only raises legal questions on appeal. The necessary facts are as follows.

On August 5, 2007, around 9 p.m., a two-vehicle accident occurred west of Wathena, Kansas. Robert Young was driving a F-350 truck and had three passengers. Young testified that a Corvette attempted to pass him but then struck the side of the truck, causing the truck to "fishtail." The truck left the road, struck a culvert, and came to rest upside down in the ditch. All three passengers were killed, but Young survived.

Cluck is the owner of the Corvette. He denied having had any alcohol throughout the day but stated he had met his friend Charles Harrelson for drinks at the VFW in Wathena early in the evening. Cluck testified he had three drinks at the VFW and then asked Harrelson if he would drive the Corvette home because Cluck had been traveling all day and did not want to drive after three drinks. Cluck testified he remembered leaving the VFW, but he was in the passenger side of the Corvette. The next thing Cluck claims he remembers was waking up still in the passenger seat with Harrelson standing outside the car talking to him. Cluck testified that Harrelson told him they had been in a wreck and there were three casualties.

Harrelson testified that he and Cluck left the VFW together, but they did so in different vehicles. He testified he was going to follow Cluck home in his F-350 but got a phone call just as he was leaving, which delayed him for a few minutes. Harrelson came upon the accident and found Cluck sitting in the passenger seat of the Corvette. Harrelson testified he and Cluck began to look for the victims but Cluck said that they should get out of there. Harrelson said, "We can't leave." However, shortly thereafter, Harrelson left the scene before the authorities arrived. He testified he drove home in his F-350—the same truck he had driven to the scene. Harrelson testified he did not drive the Corvette the night of the crash.

Nicolas Bauman was behind the Corvette and the truck when the accident occurred. Bauman testified he immediately pulled his

car over to render assistance. He testified that he first went to the Corvette and Cluck looked like he had been thrown out of the driver's seat towards the passenger seat but his legs and bottom section were still in the driver's side of the car. Apparently, no one else was in the Corvette. After determining that Cluck was not seriously injured, Bauman then tried to assist the victims in the truck.

Cluck was treated at the hospital for a laceration on the back of his head. Cluck gave a blood sample. His blood-alcohol concentration was .22 approximately 1 hour after the accident. The day after the accident, Cluck voluntarily went to the police station to give a statement. Harrelson drove him to the station, where they both gave voluntary statements. Trooper Jerry Clary testified that Cluck admitted to driving the Corvette during the accident and that he lost control of his vehicle as he tried to pass.

The State charged Cluck with three counts of involuntary manslaughter while driving under the influence of alcohol, DUI, aggravated battery, and improper passing. A jury convicted Cluck on all charges except the charge of aggravated battery. Upon a motion for directed verdict, the court found that Cluck's conviction for DUI was multiplicitous with the manslaughter convictions and set aside the DUI conviction. The trial court sentenced Cluck to a controlling term of 155 months' incarceration and ordered the Department of Corrections to post photographs of the victims in Cluck's cell for the duration of his prison term.

Cluck argues the trial court erred by denying his motion to suppress his confession. Cluck contends he was in custody when he made the statement and officers had failed to give him *Miranda* warnings prior to his interrogation. See *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, *reh. denied* 385 U.S. 890 (1966).

When a pretrial motion to suppress has been denied, the moving party must still object to introduction of the evidence at trial in order to preserve the issue for appeal. *State v. Jones,* 267 Kan. 627, 637, 984 P.2d 132 (1999). The latter requirement is commonly known as the contemporaneous-objection rule and is codified in K.S.A. 60-404. See *State v. King,* 288 Kan. 333, 341-42, 204 P.3d

585 (2009). Specifically, K.S.A. 60-404 requires an on-the-record "objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." Among other advantages, this requirement allows a court to rule on the evidence before trial, but after hearing how the evidence unfolds during trial, it allows the court to be prepared—after timely trial objection—to reconsider its original ruling. *Cf. Luce v. United States*, 469 U.S. 38, 41-42, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984) (in limine ruling "is subject to change when the case unfolds").

In *Jones*, the defendant argued that his counsel's action at the beginning of trial to renew his previous motions to suppress was the equivalent of a timely interposed objection to evidence when it was offered later during trial. The court rejected this argument, citing *State v. Nunn*, 244 Kan. 207, 213, 768 P.2d 268 (1989), for "why nothing short of an objection at the time evidence is offered satisfied the requirement" of a contemporaneous objection. *Jones*, 267 Kan. at 637. The Court of Appeals has rejected a similar defense argument after denial of a pretrial motion to suppress, *i.e.*, that an objection at the close of the State's evidence is contemporaneous. See *State v. Daniels*, 28 Kan. App. 2d 364, 365, 17 P.3d 373 (2000), *rev. denied* 272 Kan. 1420 (2001). Because the objections were not contemporaneous, both the *Jones* and *Daniels* courts concluded that the evidentiary issue was not preserved for appeal.

Although his pretrial motion to suppress his confession was denied, Cluck made no contemporaneous objection to the use of his confession at trial. Consequently, he has failed to preserve the issue for appeal.

Nevertheless, we will perhaps save judicial time and effort by noting that we find Cluck's underlying argument lacks merit. Cluck claims he was subjected to a custodial interrogation for two reasons: (1) Trooper Clary testified that he believed Cluck was the only suspect responsible for the accident; and (2) the interrogation occurred in the interview room at the county jail.

Cluck attempts to shift the focus onto Trooper Clary because Clary believed that Cluck was the only person responsible for the accident. While probably true, this fact is not controlling. "The question of whether an interrogation is custodial must be deter-

mined based on an objective standard of how a reasonable person in the suspect's situation would perceive his or her circumstances." *State v. Jones*, 283 Kan. 186, Syl. ¶ 3, 151 P.3d 22 (2007). A person is not arrested or in custody until significant restraints have been placed upon that person's freedom of movement. *State v. Bohanan*, 220 Kan. 121, 128, 551 P.2d 828 (1976). In *State v. Jones*, 246 Kan. 214, 216-18, 787 P.2d 726 (1990), the court determined that a defendant who voluntarily went to the police station, was interviewed for approximately an hour, and then left the station without restraint being placed on his movement was not in police custody. As in *Jones*, the trial court here correctly determined the situation was one of an investigative interrogation, not a custodial interrogation, and that Cluck was not in custody when he made the statement.

When, after a full pretrial hearing, a trial court determines that an extrajudicial statement by an accused was voluntarily given and admits the statements into evidence at trial, an appellate court will not reverse the trial court if its findings are supported by substantial competent evidence. *State v. White*, 246 Kan. 28, Syl. ¶ 1, 785 P.2d 950, *modified* 246 Kan. 393, 789 P.2d 1175 (1990). We agree with the trial court's finding that Cluck's statement was completely voluntary. The simple fact that Cluck's interview occurred in the interview room at the county jail does not in itself create a custodial interrogation.

Cluck also argues the district court failed to exercise its discretion in denying his motions for departure. We disagree.

Cluck received a presumptive sentence, and presumptive sentences, by statute, are generally not appealable. See K.S.A. 21-4721(c)(1). Cluck points to a tension between the statute requiring findings on a departure motion and the statute making presumptive sentences generally unappealable. The Kansas Supreme Court has concluded that a defendant generally cannot appeal when the district court sentences the defendant to a presumptive sentence, even if it fails to issue a ruling on a departure motion. In *State v. Koehn*, 266 Kan. 10, 966 P.2d 63 (1998), the defendant raised an argument similar to Cluck's. The court examined both statutes and noted the inconsistency. The court concluded that the inconsis-

tency could be resolved by focusing on the legislature's refusal to allow appeals of presumptive sentences: "Because no appeal is permitted from a presumptive sentence, we know of no reason for K.S.A. 21-4718(a)(2) findings of fact and conclusions of law when a presumptive sentence is imposed." 266 Kan. at 15; see also *State v. Mares*, 20 Kan. App. 2d 971, 972, 893 P.2d 296, *rev. denied* 257 Kan. 1094 (1995) ("If a court does depart, K.S.A. 1993 Supp. 21-4718[c] requires it to make specific findings of fact or law. A similar requirement is not imposed for refusal to depart."). Consequently, under these facts we have no jurisdiction to consider Cluck's argument, but again, even on the merits, the argument is without merit.

Cluck claims the district court erred by denying his requests for a downward durational departure sentence without stating why the proposed mitigating circumstances were insufficient to constitute a departure. K.S.A. 21-4643(d) provides that the district "judge shall impose the mandatory minimum term of imprisonment provided by subsection (a), unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure."

Contrary to Cluck's contention that this issue involves the interpretation of K.S.A. 21-4643(d), calling for an unlimited de novo review, the established standard of review is one of abuse of discretion. See *State v. Seward*, 289 Kan. 715, 721, 217 P.3d 443 (2009). In *State v. Thomas*, 288 Kan. 157, 164, 199 P.3d 1265 (2009), the court stated:

"On appellate review of this process, we apply a broad abuse of discretion standard because this issue involves the district court's consideration and weighing of mitigating circumstances. Under this standard ' "[j]udicial discretion is abused when no reasonable person would take the view adopted by the district judge." ' *Ortega-Cadelan*, 287 Kan. at 165 (quoting *State v. Engelhardt*, 280 Kan. 113, 144, 119 P.3d 1148 [2005]); see *State v. Jones*, 283 Kan. 186, 215-16, 151 P.3d 22 (2007) (same broad abuse of discretion standard applies to appellate review of weighing of aggravating and mitigating circumstances before imposing hard 50 sentence)."

In his departure motions, Cluck asked the district court to impose a dispositional and durational departure sentence based on a

number of supposed mitigators: (1) he had no intent to commit the crimes; (2) he assumed responsibility; (3) he had no previous accidents and had an excellent driving record; (4) he expressed his remorse about the deaths; (5) he was a hard worker, family man, and member of the national guard; (6) he has been extremely cooperative in jail; (7) he is a good person; (8) he is willing to receive treatment; (9) he has supportive family; and (10) the length of time served will not affect the harm caused by his actions.

Upon consideration of the mitigating factors, arguments of counsel, and Cluck's witnesses, the district court stated that it specifically reviewed the motions for durational and dispositional departure and considered all the mitigating testimony. The court held that "there's no substantial and compelling reasons existing" to depart. The court stated that it determined Cluck's sentence and in doing so denied the motions to depart based on several factors: (1) three people died in the accident; (2) prior DUI in 1992; (3) .22 blood-alcohol concentration at or within 1 hour after the time of the accident; and (4) .219 blood-alcohol concentration at the time he was later arrested.

In *Thomas*, the court stated:

"[T]he statutory language regarding the consideration of mitigating circumstances is 'clear and unambiguous, stating the judge shall impose a life sentence "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure.' " *Ortega-Cadelan*, 287 Kan. at 164 (quoting K.S.A. 2006 Supp. 21-4643[d]). . . . [A] two-step procedure applies: First, the judge reviews mitigating circumstances and, second, the judge determines if there are substantial and compelling reasons for a departure. 287 Kan. at 164.

. . . .

"A review of the sentencing transcript convinces us that the district court considered all of Thomas' arguments, acknowledged the mitigating circumstances asserted by Thomas, and explained why it chose to reject the request for a downward durational or dispositional departure. Reasonable people could agree with the district court's assessment of whether the mitigating circumstances were substantial and compelling.

"The district court did not abuse its discretion by denying Thomas' motion for a downward durational or dispositional departure sentence under K.S.A. 2006 Supp. 21-4643(d)." 288 Kan. at 163-64.

Here, just as in *Thomas,* the district court followed the two-step procedure by considering the mitigating circumstances and its determination that they were not substantial and compelling reasons for a departure. Reasonable people could agree with the district court's assessment that the mitigating circumstances were not substantial and compelling. Here, as in *Seward,* 289 Kan. at 722, Cluck has "demonstrated no abuse of discretion in the district court's denial" of Cluck's departure motions for a downward durational departure sentence.

Cluck challenges the district court's order requiring the posting of the victims' photographs in his prison cell as part of his prison sentence. The premise of Cluck's argument involves the separation of powers. We find the district court overstepped its bounds in ordering a sentence that is not provided for by statute.

A court may correct an illegal sentence at any time. K.S.A. 22-3504(1). An illegal sentence, as contemplated by K.S.A. 22-3504(1), is a sentence imposed by a court without jurisdiction; a sentence which does not conform to the statutory provision, either in the character or the term of the punishment authorized; or a sentence which is ambiguous with respect to the time and manner in which it is to be served. *State v. Davis,* 283 Kan. 767, 768-69, 156 P.3d 665 (2007).

The legislature defines crimes and establishes punishments, the judiciary determines whether a criminal offense has been violated and imposes punishment for a violation, and the executive branch enforces the laws and executes an imposed sentence. *Brull v. State,* 31 Kan. App. 2d 584, 588, 69 P.3d 201 (2003). Kansas courts therefore do not have the inherent authority to impose terms or conditions of sentences for criminal acts and must act within the limits of their statutory authority when imposing sentences. See *State v. Page,* 60 Kan. 664, 667, 57 P. 514 (1899) ("It is undeniably true that the sole power to provide for the punishment of offenders belongs to the legislature. It alone has the power to define offenses and affix punishments. Its authority in these respects is exclusive and supreme. Courts are empowered only to ascertain whether an offense has been committed, and, if so, to assess punishment, within the terms of the law, for its commission."). While courts

may find some punishments unconstitutional, a district court may not impose a condition of incarceration as part of an executed sentence unless the condition is expressly authorized by statute.

The district court's order requiring the posting of the victims' pictures was not statutorily authorized. Cluck was convicted of multiple counts of involuntary manslaughter while under the influence, DUI, and improper passing. K.S.A. 21-4603d(a) sets forth the sentences available for Cluck. It authorizes courts to order imprisonment of the defendant, payment of a fine, or release the defendant on probation with appropriate conditions. K.S.A. 21-4603d(a) does not authorize a court to require the defendant to post photos of the victims in his or her prison cell. The district court therefore acted without authority. If the legislature wishes to allow such orders as the one here, it is free to do so. But the courts have no authority to do so.

The Kansas Supreme Court has invalidated other attempts by district courts to impose conditions on incarceration not provided for by law. In *State v. Post*, 279 Kan. 664, Syl. ¶ 2, 112 P.3d 116 (2005), the court invalidated the imposition of a no-contact order as a condition of a prison sentence. In *State v. Bowers*, 239 Kan. 417, Syl. ¶ 4, 721 P.2d 268 (1986), the court held that a criminal defendant who has been sentenced to prison cannot be charged with repayment of restitution while in prison.

As was the case in *Post*, Cluck requests that we vacate the condition placed on his incarceration and remand the matter to the district court for resentencing. We decline to follow Cluck's resentencing suggestion. The illegal photo-posting condition of Cluck's sentence is vacated; the remaining portions of Cluck's sentence are valid and remain in force as we rule below.

We specifically do not rule on the question of whether this would be an appropriate condition of probation or parole as that is not the issue before us.

Affirmed part and vacated in part.