NOT DESIGNATED FOR PUBLICATION

No. 114,221

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHANE RUTLEDGE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Edwards District Court; BRUCE T. GATTERMAN, judge. Opinion filed March 24, 2017. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, Assistant Solicitor General, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., HILL, J., and WALKER, S.J.

*Per Curiam*: Shane Rutledge asks us to set aside his convictions for aggravated indecent liberties with a child and rape because he was not advised of his *Miranda* rights before his police interview, and because the trial judge failed to appropriately answer a question from the jury. We are not persuaded by Rutledge's contention that he was in custody at the time of his interview. Just because the interview took place in a secured facility, where both the officer's and Rutledge's movements were restricted, does not mean that he was in custody requiring a *Miranda* warning. Concerning the answer to the jury question, we note that the judge gave the answer to the jury that Rutledge's attorney

1

suggested. If a party invites the court to err, they are barred from complaining about that error on appeal. Finding no error, we affirm.

*An adoptive father takes liberties with his daughter.*

We will refer to the young victim in this case by her initials, T.R. When she was 11 years old she began feeling uncomfortable around Rutledge due to his actions when he would tuck her into bed. The first event occurred one night when she was laying on her stomach in bed. Rutledge began to rub T.R. on her back, touching her skin underneath her shirt. Rutledge eventually unhooked T.R.'s bra and began rubbing her breasts. This type of touching occurred between 10 and 20 times while T.R. was living with Rutledge.

The first four to five times the touching occurred, it only involved rubbing T.R.'s back and touching her breasts. Other times Rutledge touched T.R. inappropriately, it involved Rutledge touching T.R.'s vagina. The first time Rutledge touched T.R.'s vagina, he placed his hand underneath the waistband of her underwear onto her pubic area. The second time Rutledge touched T.R.'s vagina, he placed his hands through the leg opening of her underwear. The second touching involved Rutledge moving his hand across T.R.'s labia. Rutledge applied pressure on her vaginal entrance and penetrated her labia. The vaginal touching occurred between 10 and 20 times.

In August 2009, T.R.'s mother had moved to Kinsley, Kansas, and T.R. moved into her mother's apartment. T.R. wanted to move to her mother's apartment because she did not like what Rutledge was doing to her. In October 2009, Rutledge moved to Springfield, Missouri.

T.R. did not immediately tell her mother what Rutledge had done to her. The first person T.R. told was a classmate during a health course in her freshman year of high school. Later that year, T.R. informed another classmate what had happened to her. In

2

June 2013, T.R. told a friend in her youth group what Rutledge had done to her. Her friend told T.R. to tell her mom what happened, and a month later—in July 2013—T.R. told her mom.

Officer Wray Nielander investigated. Nielander talked with T.R., her mother, both classmates T.R. had told, T.R.'s friend in her youth group, and Rutledge. During the investigation, Rutledge was living in Springfield, Missouri.

Officer Nielander called Rutledge and informed him that Nielander wanted to talk with him about a criminal investigation. Officer Nielander set up an interview with Rutledge at a Springfield police station. Officer Nielander confirmed the appointment with Rutledge, then drove 6 or 7 hours from Kinsley to Springfield. Officer Nielander believed Rutledge had driven himself to the police station.

The interview occurred in an interview room at the Springfield police station. Officer Nielander and Rutledge required police escorts to get to the interview room. Officer Nielander was required to check his weapon and was not armed during the interview. The Springfield police officers were not present during the interview. The Springfield police department was a secured facility, and the doors required keycard access.

Officer Nielander testified that during the interview, Rutledge had no problems with English or the ability to understand questions, was not confused, and did not appear mentally impaired. Rutledge did not ask to take any breaks or request an attorney at any time. Rutledge told Officer Nielander that he had graduated from high school and had taken some college courses in EMT training and psychology. Officer Nielander testified that he made no threats, coercive statements, or attempts to physically intimidate Rutledge. The interview was conversational and Rutledge did not refuse to answer any questions.

3

Officer Nielander did not give Rutledge the *Miranda* warning at any time. Officer Nielander testified that Rutledge was free to leave at any time but did not directly state this to Rutledge. In order for Rutledge to leave the interview room, he would have to be escorted through the building and locked doors by a Springfield police officer.

The State charged Rutledge with aggravated indecent liberties with a child and rape. Prior to trial, the court held a hearing on the admissibility of Rutledge's statements. The court found that it was Officer Nielander's intention that Rutledge was free to leave at any time, even though no specific statement was made. The basis for this finding was that Rutledge voluntarily arrived at the police station, was never placed in handcuffs, was never read the *Miranda* warning, and was never given any indication that he was about to be taken into police custody. The district court found that the security measures were outside the norm, but nothing indicated to Rutledge that the measures were put in place by Officer Nielander. Rather, the measures were put in place by the Springfield Police Department. Additionally, the court found that Rutledge was at least of average intellect, was competent to perceive his surroundings and the questions, and answered the questions in a voluntary manner. Based upon these circumstances, the district court found Rutledge's statements were free and voluntary, and the statements from the interview were admissible.

The interview was video recorded. At trial, the State offered the video into evidence, and the district court admitted the videotape over the objection of defense counsel. The videotape was played for the jury.

After the jury began deliberations, it posed a question to the court. Specifically, the jury asked:

"We heard testimony for the victim that penatration [*sic*] occurred. Our problem is that at the interview nor at the trail [*sic*] the defendant never was asked if penetration occurred.

4

Our understanding that the burden of proof is on the State. Should his <u>no</u> response be considered?"

Rutledge was present when the question was read. The district court conferred with the State and defense counsel. First, the State proffered to have the jury refer back to the instruction on rape, which included a definition of penetration. Rutledge's defense counsel responded that the record would reflect Rutledge denied penetration. Rutledge's attorney then suggested that "the first jury instructions about it's up to them to use their collective memories to arrive at a decision should be sufficient." The district court decided to refer the jury back specifically to the instruction on using its collective memory and generally to the instructions as a whole. The district court asked if there was any objection to its response. The State objected, but there was no objection by the defense.

The jury found Rutledge guilty of both rape and aggravated indecent liberties with a child. Rutledge was sentenced to life imprisonment with the possibility of parole after 25 years.

*Rutledge was not in custody when the officer interviewed him.*

Because the material facts concerning the motion to suppress are not in dispute, we exercise de novo review of whether suppression was appropriate. See *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013). Our general rule is that the lack of *Miranda* warnings are not a bar to the admission of evidence if the interview is not custodial. See *State v. Morton*, 286 Kan. 632, 639, 186 P.3d 785 (2008).

We use an objective standard when deciding whether a person has been subjected to a custodial interrogation. *State v. Jones*, 283 Kan. 186, 193, 151 P.3d 22 (2007), *disapproved on other grounds by State v. Nelson*, 291 Kan. 475, 487-88, 243 P.3d 343

5

(2010). The ultimate question is whether a reasonable person would have believed they were free to leave based upon the circumstances. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); *State v. James*, 276 Kan. 737, 749, 79 P.3d 169 (2003).

Rutledge does not challenge the district court's factual findings. Besides, our review of the record shows the district court's factual findings are supported by substantial competent evidence.

The district court found that Rutledge arrived voluntarily at the police station, was not placed in handcuffs, was not read the *Miranda* warning, and was not told he was going to be placed into custody at the end of the interview. Officer Nielander testified to these facts at the *Jackson v. Denno* hearing. The district court also accepted the officer's testimony concerning the security measures at the police department.

Turning to the second step, the question is whether a reasonable person would have believed they were free to leave based upon the factual circumstances. The Kansas Supreme Court uses eight factors to guide this determination, and the importance of each factor varies depending on the facts of a given case. *Morton*, 286 Kan. at 640. The eight factors are:

> "(1) When and where the interrogation occurred;
> (2) how long it lasted;
> (3) how many police officers were present;
> (4) what the officers and defendant said and did;
> (5) the presence of actual physical restraint on the defendant or things equivalent to actual restraint such as drawn weapons or a guard stationed at the door;
> (6) whether the defendant is being questioned as a suspect or a witness;

6

(7) how the defendant got to the place of questioning, that is, whether he came completely on his own in response to a police request or was escorted by police officers; and

(8) what happened after the interrogation—whether the defendant left freely, was detained, or was arrested. [Citation omitted.]" *State v. Jacques*, 270 Kan. 173, 186, 14 P.3d 409 (2000).

Essentially, Rutledge argues that because the interview took place in a police station, that fact makes the interview a custodial interrogation. Rutledge having his freedom restrained by not being able to pass through the building at will does have a bearing on whether the police encounter was a custodial interrogation. Rutledge cites for support *Stansbury v. California*, 511 U.S. 318, 324-25, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994).

But Kansas courts have looked more closely at these circumstances. A police encounter in a police station does not necessarily make the encounter a custodial interrogation on its own. *State v. Whitt*, 46 Kan. App. 2d 570, 575, 264 P.3d 686 (2011).

In this situation, it is true that both Officer Nielander and Rutledge had their freedom of movement restricted. In order to rise to the level of a custodial interrogation, there must be a significant impairment of a person's freedom of action. *State v. Cluck*, 43 Kan. App. 2d 564, 568, 228 P.3d 1074 (2010). At any time that Rutledge would have wanted to leave the interview, Officer Nielander would have had to alert the Springfield police to escort both of them through the building. Rutledge's freedom of movement was impaired but not in a substantial way. See 43 Kan. App. 2d at 568. This factor of impaired movement, on its own, is not enough to support a finding that a reasonable person would have felt they were not free to leave; thus, this factor does not on its own mean the encounter was a custodial interrogation.

7

The factual circumstances of this case are comparable to *State v. Deal*, 271 Kan. 483, 495-99, 23 P.3d 840 (2001), *overruled on other grounds by State v. Davis*, 283 Kan. 569, 158 P.3d 317 (2006). In *Deal*, the interrogation lasted 3 hours and was conducted by two detectives. Deal was never told he was free to leave. However, the interrogating officer would have allowed Deal to leave had he asked. Deal was never placed in handcuffs. Deal was in a locked interview room, and in order to be let out, he would have to be "buzzed out." The police told Deal he was being investigated about a missing person. Deal was escorted to the police station to be interrogated, but he voluntarily went with the police. At the end of the interrogation, Deal was allowed to leave. The Kansas Supreme Court found that based upon these facts, a reasonable person would have viewed the encounter as an investigatory interview and not a custodial interrogation. 271 Kan. at 499. The court ruled that suppression of the evidence on this theory was not required. 271 Kan. at 499.

This interview lasted only 1 hour and was conducted by a single officer. Like Deal, Rutledge was not told that he was free to leave, but he would have been allowed to leave had he asked. Rutledge was never handcuffed. Deal being locked in the interview room and having to be "buzzed out" is obviously similar to Rutledge being in an interview room that required a police escort to reach the outside world. Rutledge was told he was being investigated similarly to Deal. Rutledge was also allowed to leave at the conclusion of the interview. One difference between the cases is that Deal was escorted to the police station and Rutledge voluntarily arrived. The court addressed this in *Morton* and found it to be an additional factual circumstance which would lead a person to believe there was not a custodial interrogation. See 286 Kan. at 648.

Based upon the holding in *Deal* and the factual circumstances being extremely similar, a reasonable person in Rutledge's position would not have believed there was a custodial interrogation. See *Deal*, 271 Kan. at 499. Because the interrogation was not a custodial interrogation, the *Miranda* warning was not required prior to the interrogation.

8

See *Morton*, 286 Kan. at 639. Therefore, the district court did not err by admitting the evidence.

Rutledge tries to raise a second point on this issue—his statements were not voluntary. In making this argument, Rutledge lists six factors which are relevant to the inquiry of voluntariness but makes no connection of the facts of his case to those factors. Rutledge provides no other caselaw on this point.

An issue not properly briefed by an appellant is deemed waived or abandoned. *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016). Failing to support a point with pertinent authority is analogous to failing to brief the issue. *State v. Murray*, 302 Kan. 478, 486, 353 P.3d 1158 (2015). By not providing any caselaw or even relating the facts to the caselaw, Rutledge has waived this issue.

To sum up, the interview was investigatory and noncustodial in nature. The district court did not err in admitting the evidence.

*The judge answered the jury question as Rutledge's attorney suggested.*

There is a doctrine of law that states, if you invite an error, then you cannot later complain about it on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). This doctrine applies to the district court's answers to jury questions. See *State v. Lewis*, 299 Kan. 828, 855, 326 P.3d 387 (2014). When a defendant unequivocally agrees to the language of an answer to a jury question, the defendant is prevented from raising that issue on appeal. *State v. Bruce*, 255 Kan. 388, 396-98, 874 P.2d 1165 (1994); see *State v. Adams*, 292 Kan. 151, 159, 163, 254 P.3d 515 (2011). Invited error also bars a defendant from raising an issue about the answer of a jury question when the defendant acquiesces to language proposed by the State or court. *State v. Cramer*, 17 Kan. App. 2d 623, 632, 841 P.2d 1111 (1992).

Here, Rutledge's counsel made a statement and a suggestion. The statement was that he believed the record indicated Rutledge had denied penetrating T.R.'s vagina. Based upon this statement, Rutledge's attorney asked the court to answer the question by referring the jury back to the instruction on using its collective memory. The response the court gave was to refer the jury back to the instruction on using its collective memory and generally to the instructions as a whole. Rutledge's proposed language shows that he unequivocally agreed to the use of that language. Furthermore, when the district court asked if there were any objections to the proposed answer, Rutledge did not respond.

This case is distinguishable from the holding in *Lewis*, where the judge gave an answer that was different from the answer proposed by the defendant. 299 Kan. at 855. The district court providing a different answer to the question meant that the defendant did not invite the error. 299 Kan. at 855. Here, the answer proposed by the defendant and the answer given by the court were the same. Rutledge's proposed language to respond to the jury question means that he invited the error and cannot raise the issue on appeal. *Bruce*, 255 Kan. at 396-98.

Going further, Rutledge now claims a procedural error in how the answer was given. Rutledge argues that the district court erred by responding to the jury's question in writing. Rutledge cites K.S.A. 2014 Supp. 22-3420(d) as the controlling statute for the procedure of answering jury questions.

This law specifically allows for the district court to answer the question of a jury in writing—"[t]he court shall respond to all questions from a deliberating jury in open court or in writing." K.S.A. 2014 Supp. 22-3420(d). The district court answered the jury's question in writing; a procedure the statute permits. If a court does what a statute permits, then we cannot say the action is unreasonable. *State v. Collins*, 303 Kan. 472, 476-77, 362 P.3d 1098 (2015). Therefore, the district court did not abuse its discretion when it answered the jury question in writing.

10

Affirmed.